**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN MICHAEL COHAN, *et al.*, ) | |
| ) | |
| **Plaintiffs** ) | Civil Action No. 12-cv-3203(JS)(AKT) |
| ) | |
| **vs.** ) | |
| ) | |
| COLUMBIA SUSSEX MANGEMENT, LLC ) | |
| d/b/a MELVILLE MARRIOTT, ) | |
| ) | |
| **Defendant** ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN PARTIAL OPPOSITION**
**TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION**
<u>**AND NOTICE TO "CLASS"**</u>

**SPECTOR GADON & ROSEN, P.C.**

Dated: February 4, 2013

David B. Picker, Esquire  (DP9658)
dpicker@lawsgr.com
George M. Vinci, Jr., Esquire
(*Admitted Pro Hac Vice*)
gvinci@lawsgr.com
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8888 / (215) 241-8844 (fax)

One Penn Plaza - 36th Floor
New York, NY 10119
*Counsel for Defendant*
*Columbia Sussex Management, LLC*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ ii

Preliminary Statement................................................................................................... 1

Procedural Background and Statement of Facts ......................................................... 2

Argument .......................................................................................................................... 4

I.     THE COLLECTIVE ACTION CLASS SHOULD BE LIMITED IN SCOPE ................. 4

      A.    The Collective Action Should Be Limited To Only Those Employees
           Who Worked At Least Part Of The Time As Banquet Servers ............................. 5

      B.    The Collective Action Should Be Limited To Only Those Employees
           Who Worked At The Melville Facility ................................................................. 7

      C.    The Collective Action Should Be Limited To Only Those Employees Who
           Worked Within The Three Years Prior To The Date Of Notice ............................ 9

      D.    The Collective Action Should Be Limited To Only Those Employees Who
           Were Not Employed Subsequent To September 2010 .......................................... 10

II.    NOTICE SHOULD BE SENT ONLY TO PERSONS WHO WERE EMPLOYED
      BY MELVILLE MARRIOTT WITHIN THE PRIOR THREE YEARS PRIOR TO
      THE FILING OF THE COMPLAINT ........................................................................ 10

III.   THE NOTICE SHOULD BE MODIFIED TO CORRECT DEFECTS ........................... 15

      A.    The Description Of The Addressees, The Potential Class And The
           Lawsuit Should Be Corrected, And Defendant's Denial Of All Claims
           Made Clear ............................................................................................................. 15

      B.    The Deadline For Returning Consent To Join Forms Should Be
           Reduced To Sixty (60) Days From Mailing .......................................................... 16

      C.    "What Happens If I Join The Lawsuit" Should Be Clarified ................................. 17

      D.    The Statement Concerning Defendant's Lawyers Should Be Modified ............... 17

      E.    The Second Paragraph Of Section 8 (Retaliation) Should Be Deleted ................. 18

Conclusion    ......................................................................................................... 18

# <u>TABLE AUTHORITIES</u>

## <u>Federal Cases</u>

<u>Alvarez v. IBM Restaurants, Inc.</u>, 839 F. Supp.2d 580 (E.D.N.Y. 2012) ........................11, 13, 14

<u>Avila v. Northport Car Wash, Inc.</u>, 774 F. Supp.2d 450 (E.D.N.Y. 2011).........11n., 12n., 13n., 16

<u>Cano v. Four M Food Corp.</u>, 08-CV-3005(JFB)(AKT), 2009 WL 5710143 (E.D.N.Y., Feb. 3, 2009) ....................................................................................................11n., 12, 13, 18

<u>Cruz v. Lyn-Rog, Inc.</u>, 754 F. Supp.2d 521 (E.D.N.Y. 2010) ..................................11n., 12n., 13n.

<u>Gjurovich v. Emmanuel's Market Place, Inc.</u>, 282 F. Supp.2d 101 (S.D.N.Y. 2003). 15, 16, 17-18

<u>Hamadou v. Hess Corp.</u>, 12 Civ. 0250 (CM)(JLC), 2013 WL 164009 (S.D.N.Y., Jan. 16, 2013) ..............................................................................................................14

<u>Hanchard-James v. Brookdale Family Care Centers</u>, 12 Civ. 1922 (BMC), 2012 WL 3288810 (E.D.N.Y. Aug. 9, 2012).................................................................10, 11, 15

<u>Hoffman-LaRoche v. Sperling</u>, 493 U.S. 165 (1989) .............................................................11, 14

<u>Jenkins v. TJX Companies, Inc.</u>, 853 F. Supp.2d 317 (E.D.N.Y. 2012) .........................................4

<u>Laroque v. Dominos Pizza, LLC</u>, 557 F. Supp.2d 346 (E.D.N.Y. 2008) ....................9, 10, 15, 16

<u>Lujan v. Cabana Management, Inc.</u>, 10-CV-755 (ILG), 2011 WL 317984 (E.D.N.Y. 2011)........................................................................4, 7n., 8-9, 11, 12-13, 14, 16, 17

<u>McBeth v. Gabrielli Truck Sales, Ltd.</u>, 768 F. Supp.2d 396 (E.D.N.Y. 2011).......................11, 15

<u>Moore v. Eagle Sanitation, Inc.</u>, 276 F.R.D. 54 (E.D.N.Y. 2011)..................11n., 12, 13n., 16, 17

<u>Myers v. Hertz Corp.</u>, 624 F.3d 537 (2d Cir. 2010) ....................................................................11

<u>Pineda v. Jim-Mar Consultants, Inc.</u>, 741 F. Supp.2d 403 (E.D.N.Y. 2010)...............11n., 12n., 13

<u>Realite v. Ark Restaurants Corp.</u>, 7 F. Supp.2d 303 (S.D.N.Y. 1998) ...............................7n., 11n.

<u>Sobczak v. Awl Industries, Inc.</u>, 540 F. Supp.2d 354 (E.D.N.Y. 2007) ...................................15, 18

Suarez v. S&A Painting & Renovation Corp., No. 08-CV-2984 (CPS)(JO), 2008 WL 5054201 (E.D.N.Y., Nov. 21, 2008) ..................................................................................12, 15

Wraga v. Marble Lite, Inc., 05-CV05038(JG)(RER), 2006 WL 2443554 (E.D.N.Y., Aug. 22, 2006) ...........................................................................................................11n.

## Statutes and Rules

29 U.S.C. §207 ......................................................................................................................3

20 U.S.C. §207(i) .................................................................................................................6

29 U.S.C. §216(b) ......................................................................................................3, 11, 12

29 U.S.C. §255 ..............................................................................................................2, 9, 10

29 U.S.C. §256 ................................................................................................................2, 9

New York Labor Law §196-d ...............................................................................................3

New York Labor Law §663 ...................................................................................................3

12 NYCRR §142-2.2 .............................................................................................................3

F.R.Civ.P. 20 ......................................................................................................................14

F.R.Civ.P. 23 .............................................................................................................12, 14n.

F.R.Civ.P. 24 ......................................................................................................................14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOHN MICHAEL COHAN, *et al.*, | ) | |
| | ) | |
| **Plaintiffs** | ) | Civil Action No. 12-cv-3203(JS)(AKT) |
| | ) | |
| **vs.** | ) | |
| | ) | |
| COLUMBIA SUSSEX MANGEMENT, LLC | ) | |
| d/b/a MELVILLE MARRIOTT, | ) | |
| | ) | |
| **Defendant** | ) | |

### DEFENDANT'S MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE TO "CLASS"

#### Preliminary Statement

Defendant Columbia Sussex Management, LLC ("Defendant" or "CSM"), by its undersigned counsel, respectfully submits this Memorandum of Law In Partial Opposition to Plaintiffs' Motion For Conditional Certification and Court-supervised notice to potential Fair Labor Standards Act collective action plaintiffs pursuant to 29 U.S.C. §216(b).

Plaintiffs seek to preliminarily "certify" and send Court-approved and supervised notice to a "class" of purported plaintiffs defined as follows:

> "All individuals who currently or formally [*sic*] performed work as service employees, including but not limited to banquet servers, waiters, bussers, bartenders, clean up crew, housemen, bellmen, runners, maintenance workers, and/or hosts/hostesses for Marriott or related entities since June 27, 2006. Corporate officers shareholders, directors, administrative employees, and other customarily exempt employees are not part of the defined class."

Because the purported scope of the "class" to which Plaintiffs seek to give notice is overbroad in time, place and description, and because the notice that Plaintiffs seek to give is both overbroad and unduly suggestive, the specific relief sought by Plaintiffs should be denied.

Rather, a modified notice (as set forth below) should be sent only to potential members of

a conditional FLSA collective action defined as follows:

> "All individuals who worked at least part of the time as banquet servers or
> banquet bartenders at the Marriott Melville operated by Columbia Sussex
> Management LLC, from [insert date 3 years prior to date of notice] to August
> 31, 2010.  Corporate officers shareholders, directors, administrative
> employees, and other customarily exempt employees are not part of the
> defined class."

## Procedural Background and Statement of Facts

Plaintiffs Cohan and Barthelemy commenced this action on June 27, 2012. (See

Complaint ("Cplt."), Exhibit A hereto.)  On December 17, 2012, Plaintiffs filed the consent of

Marie Carmelle Victor to join the action as an additional plaintiff.  Over the course of the six

months-plus that this action has been pending, no-one else has sought to join the action.

All three Plaintiffs are former employees who worked as banquet servers, in addition to

other tasks, at CSM's Melville Marriott banquet facility.  Plaintiff Cohan worked as a banquet

server (and other jobs) in Melville from May 2009 through August 2010. (Cohan Decl. [Motion

Exh. A], ¶¶ 2-3; Cplt. ¶9).

Plaintiff Barthelemy worked as a banquet server (and a very limited number of other

tasks) at the Melville Marriott "from approximately April 14, 2007 through July 21, 2009."

(Barthelemy Decl. [Motion Exh. B], ¶¶ 2-3[1])  Significantly, Barthelemy's consent to join

collective action is dated July 21, 2012 (see Exhibit B hereto), and was not filed until July 23,

2012 (see Docket [p.4 of 7, Doc. #9], Exhibit C hereto), so he does not have a valid FLSA claim

(see 29 U.S.C. §§ 255, 256), and he is therefore not a proper representative plaintiff.

---

[1]  Contradicting the breadth of tasks alleged in his Declaration, the Complaint (¶10) alleges only that Mr.
Barthelemy "formerly worked for Defendant as a server…"

Joining Plaintiff Victor alleges that she worked "as a banquet server and waiter" at the Melville Marriott "from approximately 2006 until September 2010;" like the others, she also allegedly provided after-party "cleaning services." (Victor Decl. [Motion Exh. E], ¶¶ 2-3) However, Defendant's records show that Victor was hired in March 2007, and was terminated in March 2009. CSM's records also show that the last time Victor worked more than forty hours in a week was the pay period ending June 14, 2007, well over three years prior to filing her consent. (See Declaration of Henry Michaud, attached as Exhibit D hereto, at ¶¶ 7-9 , and Exhs. 1 & 2 thereto.) Therefore, like Barthelemy, Victor also does not have a valid FLSA claim.

The Complaint (Exh. A) seeks monetary damages for two separate alleged violations of Plaintiffs' rights as workers: *First*, for alleged failure to pay time-and-a-half pay for hours worked above 40 hours in a week, in alleged violation of the Fair Labor Standards Act, 29 U.S.C. §207 (Count I), and New York Labor Law §663 and 12 NYCRR §142-2.2 (Count II). And *second*, for alleged unlawful taking of gratuities intended for Plaintiffs, in alleged violation of N.Y.L.L. §196-d (Count III).[2] Only Count I, for violating the FLSA's overtime requirements, is relevant to this sparsely-supported motion for conditional "certification" as a collective action under 29 U.S.C. §216(b). Plaintiffs have not moved for class certification of their state law claims.

The sparse support for Plaintiffs' instant motion includes the one-page (not counting caption and signature) Declarations of the original and joining Plaintiffs (Motion Exhs. A, B and E). Plaintiffs also submit a Declaration of Marjorie Massillon (Motion Exh. D), who "worked as a banquet server and waiter," and "perform[ed] cleaning services after the party," for the Melville Marriott from approximately 2006 to May 2009. (In fact, Defendant's records show

---

[2] There is a Fourth Cause of Action for allegedly improper paystubs which is not a material part of the case.

that Massillon's date termination was July 23, 2008, and her last paycheck was for the period

ending May 22, 2008. See Exhibit D, ¶10.)  Plaintiffs concede that Ms. Massillon does not have

a timely claim under the FLSA. (Moving Memo. p.9n.4)  Finally, Plaintiffs submit the

Declaration of Jean Boucard (Motion Exh. C), allegedly a former banquet manager at the

Melville Marriott, who also "performed occasional work" at the separate Marriott facility in

Islandia, New York, and who testifies vaguely and conclusorily, but without naming names or

specifying time periods, that banquet servers (who also may have performed other tasks) at both

facilities were not paid overtime.

  Additional facts will be noted as relevant to particular arguments.

**<u>Argument</u>**

I.  **<u>THE COLLECTIVE ACTION CLASS SHOULD BE LIMITED IN SCOPE</u>**

  The procedure for allowing notice to be sent to a potential class of FLSA collective

action members is a two-step process.  We are at the first step, prior to discovery, at which the

burden on Plaintiffs is very low.  Nevertheless, the burden is not non-existent. E.g., Jenkins v.

TJX Companies, Inc., 853 F. Supp.2d 317, 322 (E.D.N.Y. 2012).  Plaintiffs must still make a

"factual showing," and still establish by some evidence the requirements for conditional

collective action certification — and, in particular, that the group of individuals to whom they

seek to give notice are "similarly situated" to the named Plaintiffs.  The allegations of the

Complaint (which in this case are almost entirely "upon information and belief" [see Exh. 1

hereto] and hence not "substantial"), and vague and conclusory declarations, are not sufficient.

E.g., Lujan v. Cabana Management, Inc., 10-CV-755 (ILG), 2011 WL 317984 (E.D.N.Y. 2011),

at *4.

For the reasons explained below, Plaintiffs have not established their entitlement to the overbroad class they seek to notify.

## A. The Collective Action Should Be Limited To Only Those Employees Who Worked At Least Part Of The Time As Banquet Servers

Plaintiffs seek to certify and notify a "class" of individuals who worked at Marriott "as service employees, including but not limited to banquet servers, waiters, bussers, bartenders, clean up crew, housemen, bellmen, runners, maintenance workers, and/or hosts/hostesses." This is too broad, because these different job descriptions are not "similarly situated" to Plaintiffs (nor even to each other). Rather, the class should be limited to only those employees who, like the Plaintiffs, worked at least part of the time as banquet servers.

The Declarations filed with Plaintiffs' Motion show that the two original Plaintiffs and the joining Plaintiff worked as banquet servers and, while they may have worked other tasks as well, it appears that such other tasks were ancillary. Marjorie Massillon, whose Declaration was also submitted by Plaintiffs although she is time-barred from asserting any FLSA claim, also worked primarily as a banquet server. Not a single person who did *not* work as a banquet server but was allegedly not paid overtime is identified. Nor is there even an express allegation that any person who did not work as a banquet server was nevertheless not paid overtime.

Thus there is *no* claim of failure to pay overtime asserted by *any person* who did *not* work as a banquet server. There is also *no showing* that anyone who did not work as a banquet

server was improperly not paid overtime.[3]

This is not a coincidence.  Plaintiffs are well-compensated service employees who received substantial commission-type compensation paid from the mandatory percentage fee charged to banquet customers, and are thus exempt from the requirement of being paid overtime pursuant to 29 U.S.C. §207(i).[4]  (E.g., Defendant's Answer, copy attached as Exhibit 5, at ¶¶ 82, 83.) Restaurant waiters (as opposed to banquet servers), bussers, non-banquet bartenders, clean up crew, housemen, bellmen, runners, maintenance workers, and hosts/hostesses all do *not* earn these percentage commissions and are treated *differently* from banquet servers and are paid overtime. (See also, Michaud Decl. [Exh. D hereto], ¶¶ 3-6.)  Plaintiffs have made no showing that any such persons who did not also work as banquet servers were not paid overtime.

As noted, the original and joining Plaintiffs and Ms. Massillon all worked as banquet servers.  They do not identify anyone who did not work as a banquet server who was not paid overtime.  Nor does Mr. Boucard.  This is not related to the merits of Marriott's defense to the overtime claims.  This is about Plaintiffs' failure, in the first instance, to make even a "minimal" factual showing that restaurant waiters (as opposed to banquet servers), bussers, non-banquet

---

[3]  The vague and conclusory Declaration of Jean Boucard, who asserts no claim, does not contradict this statement nor provide any such showing. Mr. Boucard states that "When I worked for the Marriott, I worked as a banquet manager, which primarily entailed managing staff of employees and overseeing the parties, events or banquets …," and "From my interactions with these workers and job position, I know that they did not receive time and one half compensation for all hours worked over 40 in a given week." Boucard Decl. ¶¶ 3,7. Mr. Boucard does not identify any person who did not work as a banquet server who was not paid time-and-a-half, nor does he clearly and expressly state that such ever happened. This is insufficient to demonstrate that anyone who did not work as a banquet server was not paid overtime.

[4]  Section 207(i) provides, in relevant part:
  "No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. …"

bartenders, clean up crew, housemen, bellmen, runners, maintenance workers, and hosts/hostesses, were not paid overtime or were otherwise subject to a common policy or plan that violated the FLSA, and are thus "similarly situated" to these Plaintiffs.[5]  Thus notice must be limited to only those persons who, like Plaintiffs and Ms. Massillon, worked at least part of the time as banquet servers.

**B.      The Collective Action Should Be Limited To Only Those Employees
Who Worked At The Melville Facility**

As filed, this action relates to alleged FLSA violations at Defendant's banquet facility in Melville, NY.  Indeed, Defendant is specifically identified as "Columbia Sussex Management LLC *d/b/a Melville Marriott*" (Cplt. ¶1 [emphasis added]).  Plaintiffs further allege that Defendant "is engaged in the restaurant and catering business at 1350 Old Walt Whitman Road, Melville, NY." (Cplt. ¶11)  Nevertheless, Plaintiffs now seek conditional certification of an expanded class of individuals who allegedly also worked at CSM's separate facility in Islandia. However, Plaintiffs' basis for seeking to expand the class of potential plaintiffs is insufficient.

As just noted, all three Plaintiffs worked at the Marriott facility only.  Declarant Massillon also worked only at the Marriott facility.  There is no declarant who claims to have worked in Islandia and been improperly denied overtime.  Plaintiffs do not even *identify* a single person alleged to have worked in Islandia and not been paid overtime.

The only basis put forward by Plaintiffs for expanding this action to include the Islandia facility is the Declaration of Jean Boucard, a former banquet manager who alleges that he "also

---

[5]  Contrast this lack of showing with the evidentiary showing in Lujan, supra, where the court found that tipped and non-tipped employees were "similarly situated" based upon the submission of declarations from *both* tipped and non-tipped employees attesting to alleged FLSA violations. WL at *4.  Similarly, in Realite v. Ark Restaurants Corp., 7 F. Supp.2d 303, 307 (S.D.N.Y. 1998), there was substantial evidence connecting each job position with the alleged violations of the FLSA.  Indeed, all of the cases cited by Plaintiffs (Memo. p.6) are distinguishable for this reason (as well as others).

performed occasional work" at the Islandia Marriott. (Motion Exh. C, ¶2)  Although he claims to have worked with "numerous other individuals who performed similar work [to Messrs. Cohan and Bathelemy] for the Islandia and Melville Marriotts" (id., ¶5), he does not name a single one of those persons.  Mr. Boucard continues, "From my interactions with these workers and job position, I know that they did not receive" overtime compensation "for all hours worked over 40 in a given week" (id., ¶7).  This is a strangely worded sentence.  Which workers?  What "interactions"?  What did these "interactions" consist of, who were they with, and when did they take place?  Mr. Boucard does not provide this critical information, but only concludes, without support or specificity, that "employees at both Marriotts regularly worked over 40 hours per week and were regularly not paid overtime" (id., ¶8).  Again, Mr. Boucard does not elaborate on this vague conclusion:  he does not state the basis of any personal knowledge, does not identify any potential claimants, and does not even declare that his "occasional" work at Islandia was within the FLSA's statute of limitations.  His Declaration is impossibly, and perhaps deliberately, vague.

Faced with the absence of direct, unequivocal evidence of violations within the FLSA statute of limitations at Islandia, Plaintiffs' effort to expand the scope of this action should be rejected.

In Lujan v. Cabana Management, supra, the court agreed to conditionally certify a class consisting of employees at three restaurant locations in New York, where — unlike the case here — those restaurants were represented by either the named plaintiffs or potential claimants who submitted supporting affidavits. 2011 WL 317984, at *4.  On the other hand, and applicable here, the Lujan court refused to include in the class persons who worked at defendants' Florida restaurant, where there was a paucity of reliable evidence of violations within the statute of

limitations, but only an affidavit from a person who worked in Florida prior to the limitations period, and affidavits from New York workers alleging, as characterized by the court, "that several insufficiently identified Florida workers told them 'the same things ... were occurring'" in Florida." Id., at *7-*8.

An even stronger showing than that made in Lujan was deemed similarly insufficient in Laroque v. Dominos Pizza, LLC, 557 F. Supp.2d 346 (E.D.N.Y. 2008). There, the court limited the class to the single store where the named plaintiffs worked, despite their hearsay allegations of being told by others that similar violations were occurring in five other Brooklyn stores, and despite the submission of an affidavit from a former employee who claimed to have worked in each of those stores and suffered similar violations. Id., at 349-50, 355-56.

As in Lujan and Laroque, so too here: the evidence of alleged similar violations in the Islandia facility is too thin to justify expanding this case beyond the Melville facility where Cohan, Barthelemy, Victor, and Massillon had worked.

### C.    The Collective Action Should Be Limited To Only Those Employees Who Worked Within The Three Years Prior To The Date Of Notice

It is not disputed that the statute of limitations for an action for violation of the overtime requirements of the FLSA is two years where the employer acted in good faith, and three years if the employer did not act in good faith. See 29 U.S.C. §255. Since the Court will not at this time make any determination as to Defendant's good faith, it may be assumed — for *purposes of this provisional certification only* — that the relevant statute is three years.[6] The statute of limitations continues to run until a potential plaintiff files his or her written consent to join the action. 29 U.S.C. §256(a),(b). Therefore, no-one who left Defendant's employe more than three

---

[6] As noted, Defendant alleges it acted in good faith, and so the statute of limitations will actually be two years.

years prior to the sending of Notice can have a timely FLSA claim, and no-one who left

Defendant's more than three years prior to the sending of Notice can join this collective action.

E.g., Hanchard-James v. Brookdale Family Care Centers, 12 Civ. 1922(BMC), 2012 WL

3288810 (E.D.N.Y., Aug. 9, 2012), at *5. Cf. Laroque v. Domino's Pizza, LLC, 557 F. Supp.2d

346, 357 (E.D.N.Y. 2008) (notice to persons who worked within three years of date of decision).

This should be expressed clearly in any notice that is sent.[7]

### D.   The Collective Action Should Be Limited To Only Those Employees Who Were Not Employed Subsequent To September 2010

Each of the former employees who claim not to have been paid for overtime and who

have submitted affidavits in support of Plaintiffs' motion stopped working for Defendant in or

before August 2010.  There is no declaration by anyone who is currently working for

Defendant's Marriott facility, nor any evidence that anyone is being improperly denied overtime.

Therefore, the FLSA "class" should be limited to the time period during which these persons

were employed, not later than August 2010.[8]

## II.   NOTICE SHOULD BE SENT ONLY TO PERSONS WHO WERE EMPLOYED BY MELVILLE MARRIOTT WITHIN THE PRIOR THREE YEARS

This raises a temporal question of *to whom* the Notice should be sent.  Several courts

have required that Notice be sent only to potential plaintiffs who worked for a defendant within

the prior three years, because the FLSA has at most a three-year statute of limitations (two years

for non-willful violations), see 29 U.S.C. §255, and therefore no-one who was not employed by

Defendant within that three-year period can have a viable claim.

---

[7]  This is separate from the issue of "who" should *receive* notice of this collective action, which is addressed in Point II *below*, although it is relevant to that issue.

[8]  At the most, the members of the "class" should not include persons hired subsequent to the filing of the action.

Defendant is aware, however, that this Court, and a few others, has held that, where there is a parallel claim under the New York Labor Law that is subject to a six year statute of limitations, notice should be sent to persons who worked within the six years prior to filing the action.[9] Despite this Court's stated position on this subject, Defendant respectfully requests that the Court reconsider it, and adopt instead what other courts have observed to be "the growing trend in this district" to "limit[] the notice period to three years." E.g., Alvarez v. IBM Restaurants, Inc., 839 F. Supp.2d 580, 587 (E.D.N.Y. 2012). Accord, McBeth v. Gabrielli Truck Sales, Ltd.,768 F. Supp.2d 396, 400 (E.D.N.Y. 2011); Hanchard-James, supra, 2012 WL 3288810, at *4-*5; Lujan, supra, 2011 WL 317984, at *9.

Fundamental to the issue is the purpose of the proposed Notice, and the Court's authority to permit it. That authority derives from the Supreme Court's decision in Hoffman-LaRoche v. Sperling, 493 U.S. 165 (1989), which held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. §216(b) ... by facilitating notice to potential plaintiffs." Id., at 169. In the words of the Second Circuit, "Although they are not required to do so by FLSA, district courts 'have discretion, in appropriate cases, to implement [§216(b)] ... by facilitating notice to potential plaintiffs' of the pendency of the action *and of their opportunity to opt-in as represented plaintiffs*." Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) [emphasis added], *quoting* Hoffman-LaRoche. It follows from the emphasized language that the purpose of and authority for the section 216(b) notice is to provide an opportunity for potential FLSA plaintiffs to opt in to the FLSA collective action. No case has stated an adequate basis for

---

[9] Decisions by this Court include Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 60 (E.D.N.Y. 2011); Avila v. Northport Car Wash, Inc., 774 F. Supp.2d 450, 456 (E.D.N.Y. 2011); Cruz v. Lyn-Rog, Inc., 754 F. Supp.2d 521, 526 (E.D.N.Y. 2010); and Pineda v. Jim-Mar Consultants, Inc., 741 F. Supp.2d 403, 404-05 (E.D.N.Y. 2010). Similar decisions by other courts include Cano v. Four M Food Corp., 08-CV-3005(JFB)(AKT), 2009 WL 5710143 (E.D.N.Y., Feb. 3, 2009), at *11; Wraga v. Marble Lite, Inc., 05-CV05038(JG)(RER), 2006 WL 2443554 (E.D.N.Y., Aug. 22, 2006), at *3; and Realite v. Ark Restaurant Corp., 7 F. Supp.2d 303, 308n.(S.D.N.Y. 1998).

extending that authority further, to provide notice to persons who do *not* have FLSA claims, but might have claims *not* covered by the FLSA and section 216(b), *nor* by any certified class.

Courts have stated two bases for allowing notice to be sent to potential claimants who cannot have valid claims under the FLSA but might have timely claims under New York's Labor Law. The first is on the ground of "judicial economy," where the "number of Plaintiffs ... does not appear to be very large," and "'it seems logical, efficient, and manageable to compel defendants' production of these names only once, if possible.'" Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 60 (E.D.N.Y. 2011), *quoting* Cano v. Four M Food Corp., 08-CV-3005(JFB)(AKT), 2009 WL 5710143 (E.D.N.Y., Feb. 3, 2009), at *10.[10]

With respect, this misses the point of the Notice which, as authorized by the U.S. Supreme Court and the Second Circuit, is to advise potential claimants of their right to join the FLSA collective action — if they have such a right. It is not a discovery tool. Indeed, it is entirely premature to provide such information with respect to persons who do not have timely FLSA claims but may be members of an as-yet-to-be-certified F.R.Civ.P. 23 class. As the court noted in Lujan, supra,

> "Such a motion [for class certification] is not yet before the Court, *nor could a United States Magistrate Judge rule on such a motion. See* 28 U.S.C. § 636(b)(1)(A)-(B) ... . Furthermore, at this stage of the litigation, there is no basis and no need for this Court to order discovery (such as the names of potential Rule 23 class members) that is relevant only to potential plaintiffs ineligible to opt in to the FLSA collective action." [Emphasis added]

2011 WL 317984, at *9, *citing* Suarez v. S & A Painting & Renovation Corp., No. 08–CV–2984 (CPS) (JO), 2008 WL 5054201, at *3n.4 (E.D.N.Y., Nov. 21, 2008). Since persons whose FLSA claims are time-barred cannot join the collective action, sending Notice to them is a waste and

---

[10] Accord, Avila ,774 F. Supp.2d at 456; Cruz v. Lyn-Rog,, 754 F. Supp.2d at 526; Pineda, 741 F. Supp.2d at 404-05.

does not further judicial economy at all. See Alvarez, 839 F. Supp.2d at 587, and Lujan, 2011 WL 317984, at *9, discussed further *below*.

In any event, the present case is distinguishable, because here it appears that the number of potential claimants within the six years prior to the filing of the Complaint is significantly larger than what moved the court in the cited cases.[11] There is also the significant additional difficulty of accessing older records.

The second basis for extending the notice period to six years stated by the courts is the observation that, provided there are valid claims under the FLSA, the court *may* (but might not) exercise supplemental jurisdiction over the timely state-law claims of even plaintiffs who do not have timely FLSA claims. In Cano, supra, the court opined that "If, however, plaintiffs successfully move at a later date for class certification of the state law claims, it is clear that this Court would have proper jurisdiction over these individuals." 2009 WL 5710143, at *10; followed, Pineda, 741 F. Supp.2d at 404. However, the Cano court *also* observed that "[o]f course, … the Court has discretion to decline to exercise supplemental jurisdiction, if it becomes clear that the state law claims substantially predominate over the FLSA claims." 2009 WL 5710143, at *11n.2. Here, considering that there is only one claim under the FLSA but multiple state law claims, and considering the short two-year FLSA statute of limitations that will likely apply (rendering these plaintiffs' potential FLSA recovery minimal at best), it is likely that the state law claims will predominate, rendering it inappropriate to keep this case in federal court.

---

[11]  In the cases where the court ordered notice to go back six years, the size of the potential class ranged from "over 20" (Moore, 276 F.R.D. at 57) to "over 25" (Cruz, 754 F. Supp.2d at 523; Avila, 774 F. Supp.2d at 453) to unspecified. Here, by contrast, the Complaint alleges that the "size of the putative class is believed to be in excess of 100 employees." (Exh. 1, ¶15)  Mr. Boucard opines that it could be as high as 200 employees. (Motion Exh. C, ¶6)

Moreover, in the *absence* here of class certification (which will be vigorously contested), it is not clear what the purpose of sending notice would be. If it is to drum up litigation and invite motions to join or intervene pursuant to F.R.Civ.P. 20 and/or 24, it would appear to violate the Supreme Court's admonition that the court not encourage litigation or joinder of the suit, or otherwise stray from strict judicial neutrality. Hoffman-LaRoche, 493 U.S. at 169, 174.

By contrast, the court in Lujan, supra, restricted the notice to a three-year period, on the ground that

> "The purpose of the instant motion is to notify and inform *those eligible to opt in* to the collective action, and *time-barred former employees may not do so.* This Court sees no purpose in sending such employees a notice informing them that (1) there is a pending opt-in lawsuit, (2) they may not opt in, and (3) they may later receive another notice should their status change due to class certification." [Emphasis added]

2011 WL 317984, at *9.[12]  Accord, Hamadou v. Hess Corp., 12 Civ. 0250(CM)(JLC), 2013 WL 164009 (S.D.N.Y., Jan. 16, 2013):

> "Here, where Plaintiffs have not yet moved for certification of the NYLL claims, I find that a three-year notice period is appropriate. It would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims. Further, … there is no danger of claim lapse."

And in Alvarez, supra, the District Court expressly adopted the reasoning expressed in Lujan, supra. Importantly, the court added that "[t]o the extent the Plaintiffs seek to provide notice to potential plaintiffs that fall outside of the putative FLSA class, but may have claims under the N.Y. Labor Law, *they must follow the discovery and notice procedures applicable to class actions under the Federal Rules of Civil Procedure.*" 839 F. Supp.2d at 587 [emphasis added].

---

[12]  In a footnote, the court noted that "Those with state law claims will not be prejudiced by deferring notice until Rule 23 class certification, as commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class until class certification is denied." Id.

We respectfully submit that this is the better rule, and should be followed here.  Other cases agreeing and allowing notice to only those potential plaintiffs who worked within the prior three years include Hanchard-James, supra; McBeth, supra; Suarez, supra, 2008 WL 5054201, at *3; Laroque, 557 F. Supp.2d at 356; Sobczak v. Awl Industries, Inc., 540 F. Supp.2d 354, 364 (E.D.N.Y. 2007); and Gjurovich v. Emmanuel's Market Place, Inc., 282 F. Supp.2d 101, 106 (S.D.N.Y. 2003).

## III.    THE NOTICE SHOULD BE MODIFIED TO CORRECT DEFECTS

### A.    The Description Of The Addressees, The Potential Class And The Lawsuit Should Be Corrected, And Defendant's Denial Of All Claims Made Clear

The addressees of the Notice, and its description of the potential class and of the lawsuit, should be corrected throughout in accordance with Points I and II *above*.  Further (and without limitation), the reference to "or related entities" after "Marriott" in the introductory paragraph beginning "TO", should be stricken.  It is meaninglessly vague and confusing.  There is only one Defendant in this case, Columbia Sussex Management LLC, d/b/a Melville Marriott.  For the same reason, all references to Defendant or Marriott should be in the *singular*.

Importantly, the fact that Defendant denies all claims must be made clearer.  Section 2 of the proposed Notice now states that Defendant denies it "violated the FLSA in any way." However, Plaintiffs' Notice also references claims under the New York Labor Law.  Ideally, because no-one can "opt in" to the State law claims and no State law class has been certified, all references to the New York Labor Law should be deleted, as was required in Hanchard-James, supra, 2012 WL 3288810, at *6.

Alternatively, the Notice must at least make clear that Defendant denies it "violated the FLSA **or the New York Labor Law** in any way."

Finally, in addition to the matters addressed in Point I *above*, and without limitation, references to claims relating to tips/gratuities under New York's Labor Law (Notice Introduction and paragraphs 2 and 6) should be deleted, as such claims are separate and independent from the overtime claims that support this FLSA collective action motion.

**B.     The Deadline For Returning Consent To Join Forms Should Be Reduced To Sixty (60) Days From Mailing**

The Form of Notice attached to Plaintiffs' Motion provides for recipients to "return" their Consent to Join Forms to Plaintiffs' counsel within ninety (**90**) days of the day of mailing.  This is both excessively long and inappropriately open-ended.

*First*, the deadline should be reduced to no more than sixty (**60**) days, "which is appropriate and is common practice under the FLSA." See Moore, supra, 276 F.R.D. at 60-61, and Avila, supra, 774 F. Supp.2d at 457. Accord, Gjurovich, supra, 282 F. Supp.2d at 107. Cf. Lujan, 2011 WL 317984, at *13 (requiring opt-in plaintiffs to return consent to join forms within forty-five (45) days).

*Second*, and equally important, this sixty-day period should be for the *filing* of the Consent to Join Forms, and not merely their "return" to Plaintiffs' counsel.  Thus, the Notice should specify that any Consent to Join Forms should be returned *so as to be **received*** within fifty (50) days and then *filed* with the Court by Plaintiffs' counsel not later than ten (10) days thereafter. See Laroque v. Dominos Pizza, 557 F. Supp.2d at 356. Cf. Gjurovich, 282 F. Supp.2d at 107 (requiring that notice state that "The form must be sent to the Plaintiff's counsel in sufficient time to have Plaintiff's counsel file it with the federal court on or before [insert date that is 60 days from date of notice mailing]"); Lujan, supra (requiring opt-in plaintiffs to *file* their consent to join forms directly with the Court within 45 days of the date of mailing).  This provides necessary finality and precision.

**C.**     **"What Happens If I Join The Lawsuit" Should Be Clarified**

Section 5 of the proposed Notice should state that joining plaintiffs "may be required to pay costs if they do not prevail." <u>E.g.</u>, <u>Moore</u>, 276 F.R.D. at 61 (court finding this is a "reasonable" addition, *citing* cases); <u>Gjurovich</u>, 282 F. Supp.2d at 107 (requiring this addition). Recipients should be made aware that such costs may include filing fees, deposition transcripts, duplicating costs, *etc.*

This section should also clarify joining plaintiffs' discovery obligations, as follows: "You may be required to provide written discovery, and oral testimony at deposition and/or at trial with respect to your claim." <u>Moore</u>, <u>supra</u>; <u>Lujan</u>, <u>supra</u>, WL at *11 (requiring "non-technical reference to discovery obligations" to insure opt-in plaintiffs understand their obligations).[13]

**D.**     **The Statement Concerning Defendant's Lawyers Should Be Modified**

The information in section 7 of the proposed Notice concerning Defendant's attorney should be modified to add the name of George M. Vinci, Esquire, to that of David B. Picker, and to further add our telephone number (215-241-8888).

Equally important, the statement "Do <u>not</u> contact Marriott's lawyers for questions about this lawsuit" [underlining in original], should be stricken.

As this Court has recognized, Defense counsel's name, address and phone number "is routinely included in notices of pendency." <u>Moore</u>, 276 F.R.D. at 61, *citing* <u>Gjurovich</u>, 282 F.

---

[13]  The proposed Notice states only that joining plaintiffs "may be *asked* to provide oral and written discovery…" [emphasis added].  The word "asked" fails to convey the compulsory nature of discovery obligations, while the legal term "oral … discovery" is less likely to be understood by a lay person than the more common "oral testimony;"  further, the possibility of testimony at trial, as well as in discovery, should be made clear.

Supp.2d at 108, and <u>Sobczak</u>, <u>supra</u>, 540 F. Supp.2d at 367 (both requiring inclusion of defense counsel's name, address and phone number). <u>Accord</u>, <u>Cano</u>, <u>supra</u>, 2009 WL 5710143, at *11 (requiring defendant's counsel's contact information to be included in notice). It makes no sense to require that Marriott's counsel's contact information be included in the Notice, as the cases do, but then admonish potential joining plaintiffs not to contact Marriott's counsel. Indeed, and to the contrary, in <u>Sobczak</u>, <u>supra</u>, the court required that the notice expressly state that the parties' pleadings "…are available for inspection at the office of the Clerk of the Court. In addition, you may obtain a copy by contacting either Plaintiffs' *or Defendants' counsel* who will forward a copy to you." 540 F. Supp.2d at 368 [emphasis added].

### E.    The Second Paragraph Of Section 8 (Retaliation) Should Be Deleted

The second paragraph of section 8 of the proposed Notice, which invites recipients of the Notice to contact Plaintiffs' counsel if they believe they have been retaliated against should be deleted as unnecessary. It is sufficient that the first paragraph of that section clearly states that any retaliation for opting in or otherwise exercising rights under the FLSA is prohibited. The second paragraph is thus surplusage, an inappropriate solicitation of further business.

### Conclusion

The Court should grant Plaintiffs' motion only to the limited extent of authorizing a

Notice — modified as set forth above — to a class of potential FLSA plaintiffs consisting of:

> "All individuals who worked at least part of the time as banquet servers or banquet bartenders at the Marriott Melville operated by Columbia Sussex Management LLC, from [insert date 3 years prior to date of notice] to August 31, 2010.  Corporate officers shareholders, directors, administrative employees, and other customarily exempt employees are not part of the defined class."

Respectfully submitted,

**SPECTOR GADON & ROSEN, P.C.**

Dated:  February 4, 2013

By:    /s/ David Picker          
David B. Picker, Esquire  (DP9658)
dpicker@lawsgr.com
George M. Vinci, Jr., Esquire
(*Admitted Pro Hac Vice*)
gvinci@lawsgr.com
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8897 / (215) 241-8844 (fax)

One Penn Plaza - 36th Floor
New York, NY 10119
*Counsel for Defendant*
*Columbia Sussex Management, LLC*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN MICHAEL COHAN, et al. ) | |
| ) | |
| Plaintiffs ) | Civil Action No. **12-cv-3203** |
| ) | |
| vs. ) | |
| ) | |
| COLUMBIA SUSSEX MANGEMENT, LLC ) | |
| d/b/a MELVILLE MARRIOTT ) | |
| ) | |
| Defendant ) | |

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing Defendant's Memorandum of Law In Opposition to Plaintiffs' Motion For "Certification" of a Collective Action was served upon the counsel listed below via E-Mail and First Class U.S. Mail on this **4**th day of **February**, 2013 to:

Jeffrey K. Brown, Esquire
Lenard Leeds, Esquire
Michael A. Tompkins, Esquire
LEEDS BROWN LAW, P.C.
1 Old Country Road - Suite 347
Carle Place, NY  11514
mtompkins@leedsbrownlaw.com

And

Lloyd R. Ambinder, Esquire
Suzanne Leeds, Esquire
VIRGINIA & AMBINDER, LLP
111 Broadway, Suite 1403
New York, NY 10006
lambinder@vandallp.com
sleeds@vandallp.com

Dated: February 4, 2013                     By: /s/ David Picker
                                            David Picker, Esquire
                                            1635 Market Street, 7th Floor

Philadelphia, PA 19103
(215) 241-8897 / (215) 241-8844 (fax)