```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHN MICHAEL COHAN, WACKSON
BARTHELEMY Individually and for and on
behalf of all similarly situated persons,
                                                                    DECISION
                        Plaintiffs,                                 AND ORDER

            -against-                                               CV 12-3203 (AKT)


COLUMBIA SUSSEX MANAGEMENT, LLC
along with any other related corporate entities
doing business as Melville Marriott,


                        Defendants.
----------------------------------------------------------------X
```

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

This Court previously granted Plaintiffs' unopposed motion for preliminary approval of the Class Action Settlement in this case. *See* DE 101. At that time, for settlement purposes, the Court appointed Virginia & Ambinder, LLP and Leeds Brown Law, P.C. (collectively, "Class Counsel") as class counsel, pursuant to Fed. R. Civ. P. 23(g). The Fairness Hearing was held on February 13, 2018. No written objections to the settlement had been received by that date and no objectors appeared at the hearing.

**II.   CLASS COUNSELS' MOTION**

   **A.    Attorneys' Fees**

Class Counsel have moved for approval of their application for attorneys' fees and costs and for approval of service awards in conjunction with the Plaintiffs' unopposed motion for final approval of the proposed settlement. *See* DE 106. Specifically, Class Counsel seeks

$980,633.19 in attorneys' fees and $19,336.01 in costs from the Qualified Settlement Fund. *See* Memorandum of Law in Support of Plaintiffs' Motion for Approval of Attorneys' Fees and Costs and for Approval of Service Awards ("Pls.' Mem.") [DE 108-5] at 1; *see generally* Declaration of Lloyd R. Ambinder in Support of Plaintiffs' Motion for Approval of Attorneys' Fees and Costs and for Approval of Service Awards ("Ambinder Decl. II") [DE 108-4]. Plaintiffs also seek approval of service awards in the amount of $10,000 each for named Plaintiffs John Michael Cohan and Wackson Barthelemy. Pls.' Mem. at 1.

The Settlement Agreement which was preliminarily approved by this Court provided that Class Counsel may apply for no more than $1,000,000 from the Qualified Settlement Fund for professional fees, costs and expenses. *See* Declaration of Lloyd R. Ambinder in Support of Plaintiffs' Motion for Preliminary Approval of the Proposed Settlement, Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel and Approval of Plaintiffs' Notice of Proposed Settlement of Class Action and Claim Form and Release ("Ambinder Decl. I") [DE 99-2], Ex. A ("Settlement Agreement and Release") ¶ 3.3(A). Plaintiffs request 30% of the $3,250,000 Qualified Settlement Fund, plus expenses, which Class Counsel maintains is "reasonable and within the typical range approved by courts in similar cases." Pls.' Mem. at 2

"'[W]here an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class,' the attorneys whose considerable effort created the fund are entitled to a reasonable fee set by the Court." *Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 222 (E.D.N.Y. 2009) (quoting *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)). "In a certified class action, the court

may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). Notwithstanding the lack of opposition to the fee application here, the Court must nonetheless assess the reasonableness of the award when considering whether the settlement is fair. *See Ersler v. Toshiba Am., Inc.*, No. CV-07-2304, 2009 WL 454354, at *7 (E.D.N.Y. Feb. 24, 2009); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 244 (E.D.N.Y. 2010). In class actions when determining appropriate counsel fees, courts have used either the lodestar method or awarded fees based on a percentage of the settlement fund. *Goldberger*, 209 F.3d at 47. The lodestar method multiplies the hours reasonably expended on the case by a reasonable hourly rate. By comparison, the common fund method calculates the amount as a percentage of the award to the class. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417-422 (2d Cir. 2010).

"The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005) (internal quotation omitted). By contrast, the lodestar method as characterized by the Second Circuit "creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line item fee audits." *Id.* (internal quotation and brackets omitted). In the instant matter, the Court finds that the requested attorneys' fees are reasonable under both the percentage method and the lodestar method.

In common fund cases, the Second Circuit favors awarding fees according to the "percentage of the fund" method. Plaintiffs point out that viewing the fees here as a percentage of the Settlement demonstrates that the requested fee award falls well within the range of reasonable fees approved by the courts in this Circuit. *See, e.g., Kochilas v. Nat'l Merchant Servs., Inc.,* No. 1:14-cv-00311, 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (finding class counsel's request in FLSA/NYLL case for one-third of the Settlement Fund to be reasonable and consistent with class litigation in the Second Circuit) (collecting cases); *Massiah v. Metroplus Health Care Plan Inc.*, No. 11–cv-05669, 2012 WL 5874655, at *6 (E.D.N.Y. Nov. 20, 2012) (awarding class counsel in FLSA and NYLL case 30% of the $4,040,000 Settlement Fund); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011) (awarding class counsel 33 1/3 % of the $7,675,000 Settlement Fund as fair and reasonable); *Odom v. Hazen Transport, Inc.*, No. 10-CV-6304T, 275 F.R.D. 400, 412 (W.D.N.Y. 2011) (attorneys' fees representing 32.6% of the total settlement fund held to be reasonable); *Stefaniak v. HSBC Bank, USA, NA*, No. 1-05-CV-7205, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (finding fee awards of 33% of the settlement fund typical of class action settlements in the Second Circuit) (collecting cases); *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding attorneys' fee to class counsel of 33% of $11.5 million Settlement Fund found to be fair and reasonable).

In the instant action, the requested fee award of $980,663.99 represents approximately 30% of the $3,250,000 settlement obtained for the Class Members. Class Counsel undertook this case on a contingency fee basis, committed substantial resources to its prosecution, and risked time and effort with no ultimate guarantee that they would be compensated for those efforts.

4

This Court, given its substantial knowledge of this case, places this litigation right in the middle of the continuum between low/medium risk and high risk. The fact that the fees requested here are comparable to fees that courts have found reasonable even when taken out of a common fund weighs in favor of the reasonableness of the fees. *See Dupler,* 705 F. Supp. 2d at 244.

Regardless of whether the percentage of the fund or the lodestar method is used, to determine the reasonableness of the Plaintiffs' fee request, the Court looks to the six factors articulated by the Second Circuit in *Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 50 (2d Cir. 2000). These factors include: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger,* 209 F.3d at 50. District courts continue to be guided by the *Goldberger* factors. *See, e.g., Paredes v. J & B Cleaners, Inc.,* 18-CV-1638 2018 WL 2461274, at *1 (S.D.N.Y. June 1, 2018); *Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.,* No. 96 CIV 0583, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002).

First, this action has been ongoing for more than six years at this juncture and Class Counsel devoted tremendous time and labor to this case during that time, without any guarantee of recovery. That work entailed many items, including substantial investigation, research involving the §207(i) exemption, the prospect of class certification, the likelihood of defendants moving for decertification of the FLSA collective, defendants' multiple motions, formal discovery, an audit of Marriott's payroll records and contracts and substantial ESI files. In addition to reviewing voluminous files of ESI, Plaintiffs' counsel successfully prosecuted a motion for collective action certification. The parties also engaged in four separate mediation

5

sessions with two respected mediators involving protracted settlement negotiations. Class counsel notes that approximately 1,430.27 hours of attorney, paralegal and staff time were engaged in moving this case to its ultimate resolution. The requested fees are also meant to compensate Class Counsel for time that will be spent administering the settlement into the future. *See Johnson v. Brennan*, 10 CIV 4712, 2011 WL 4357376, at *16 (S.D.N.Y. Sept. 16, 2011). Class Counsel have already responded to inquiries regarding the settlement and expect to answer more questions from class members after final approval, particularly after checks are issued, and will incur additional expense accordingly. *Id*.

Second, this "hybrid" action brought under both the FLSA and the New York State wage and hour statutes. "FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas-Best Frgt. Sys., Inc.*, 450 U.S. 728, 743, 101 S. Ct. 1437, 67 L.Ed. 2d 641 (1981). "Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." *Johnson*, 2011 WL 4357376, at *17. This case depended on resolution of several mixed questions of fact and law. In particular, the parties disputed the facts surrounding the job duties of the banquet servers, waiters, bartenders, bellmen, maintenance workers, etc. In addition, the issue of catered events for which Marriott included a "service charge" caused much debate. Plaintiffs alleged that a reasonable customer would have understood this charge to be in the nature of a gratuity to be transmitted to the wait staff while Defendant actually retained a significant portion of that money. These mixed factual and legal questions support approval of the attorneys' fee request by Class Counsel. *Johnson*, 2011 WL 435737, at *17 (citing

6

*deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580 at *7-8 (S.D.N.Y. Aug. 23, 2010)). Among other things, issues were raised regarding the Defendant's compensation structure and whether Defendant correctly applied the commission exemption under § 207(i) of the FLSA. Plaintiffs also claimed that they were owed for gratuities which Defendant purportedly retained unlawfully. Resolving these issues through trial would be a long and complicated process requiring even greater discovery in this case as well as further non-party testimony. The Court also notes that Class Counsel pursued claims on behalf of approximately 1,518 Class Members. *See* February 5, 2018 Amended Declaration of Lloyd R. Ambinder in Support of Plaintiffs' Motion for Final Approval of the Proposed Settlement ("Ambinder Am. Decl.") [DE 107], ¶ 6; Declaration of Claims Administrator Jarrod Salinas Regarding Notice and Settlement Administration [DE 107-1], ¶¶ 5-7. "In a class action suit, as here, the large number of plaintiffs increases the complexity of the litigation." *Jemine v. Dennis*, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012).

Third, the risks of litgation were substantial here. "Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award." *Johnson*, 2011 WL 4357376, at *17. Class Counsel has prosecuted this case on a contingency basis for six years – taking on the risk that they would not ultimately recover anything for their time and effort. "Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources." *Id.* (citation omitted). "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* (quoting *City of Detroit v. Grinnell Corp.*,

7

495 F.2d 448, 471 (2d Cir. 1974)). Here, the Plaintiffs' case hinged on an analysis – and ultimately a determination – regarding the commission exemption under 209 U.S.C. § 207(I). The Court could have found that the Marriott's compensation methodology was a bona fide commission plan pursuant to the statutory exemption. This type of potential finding required a realistic assessment of the risk here by Plaintiffs' counsel since the Seventh Circuit has actually made such a finding. *See Mechmet v. Four Seasons Hotels, Inc.*, 825 F.2d 1173 (7th Cir. 1987).

<u>Fourth</u>, the Court also looks to the quality of the representation on behalf of the Class Members. To make that determination, courts review, among other things, the backgrounds of the lawyers involved in the lawsuit and the recovery obtained. *See Steinberg*, 612 F. Supp.2d at 223 (citing *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan 31, 2007)). The quality of the representation in this litigation is evident from the record. Class counsel are well known class action employment lawyers who have extensive experience and special expertise in prosecuting and settling FLSA and NYLL wage and hour cases. *See* Ambinder Decl. II, ¶¶ 14-16; Pls.' Mem. at 12. The Second Circuit held in *Goldberger* that "the quality of representation is best measured by results, and . . . such results may be calculated by comparing the extent of possible recovery with the amount of actual verdict or settlement." *Goldberger*, 209 F.3d at 55 (internal quotation omitted). Having observed the efforts of counsel in various Court conferences as well as at the February 13, 2018 Fairness Hearing – in addition to the Court's previous cases with these attorneys – and understanding that the parties engaged in four separate mediation sessions with well-respected mediators, the Court is satisfied that Class Counsel provided quality representation to the Class Members. The substantial recovery here, namely, $3,250,000 reflects the excellent result Class Counsel

8

have achieved for their clients.

Fifth, "[c]ourts also consider the size of the settlement to ensure that the percentage awarded does not constitute a 'windfall.'" *Johnson,* 2011 WL 4357376, at *18 (citing *In re Gilat Satellite Networks, Ltd.,* No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007)). As the court in *Johnson* took note, "courts in this Circuit have routinely granted requests for one-third of the fund in cases with settlement funds substantially larger than this one." *Id.* at *19 (collecting cases). Class Counsel here have requested 30% of the Qualified Settlement Fund as attorneys' fees rather than the standard one-third. While not determinative of the reasonableness of the fee request, this reduction reflects Class Counsels' good faith. *See Hall v. ProSource Technologies, LLC*, 14-CV-2502, 2016 WL 1555128, at *16 (E.D.N.Y. Apr. 11, 2016). In addition, the Settlement Agreement was distributed to each of the prospective Class Members and no one has objected to the fee request. "The absence of any such objection, while also not dispositive of the reasonableness of the fee request, 'does lend support for approval of the award.'" *Id*. (quoting *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *12 (S.D.N.Y. Apr. 16, 2012)). "[A]lthough the percentage-of-rcovery here is based on the entire settlement fund, including the amount that will revert" to defendant, *see* Settlement Agreement, Section 3.2(B) [DE 105-3], "rather than on the portion of the fund equal to the claims actually made," the Court is satisfied that the fee requested is nonetheless reasonable in light of the *Goldberger* factors. *Diaz v. E. Locating Serv. Inc.*, 1:10-CV-04082, 2010 WL 5507912, at *8 (S.D.N.Y. Nov. 29, 2010). The Court therefore finds a fee of 30% of the Qualified Settlement Fund to be reasonable "and consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754862, at *7.

9

Sixth, as to public policy considerations, this factor weighs in favor of approval of Class Counsels' fee request. District courts and the Second Circuit "have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). As the court in *Johnson* observed:

> The FLSA and the NYLL are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945) (recognizing the FLSA's objective—ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Willix,* 2011 WL 754862, at *6; *deMunecas,* 2010 WL 3322580, at *8; *McMahon,* 2010 WL 2399328, at *7. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Willix,* 2011 WL 754862, at *6; *deMunecas,* 2010 WL 3322580, at *8; *McMahon,* 2010 WL 2399328, at *7.Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes. *Willix,* 2011 WL 754862, at *6; *deMunecas,* 2010 WL 3322580, at *8; *McMahon,* 2010 WL 2399328, at *7; *see also Sand,* 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.")

*Johnson*, 2011 WL 4357376, at *19; *Khait v. Whirlpool Corp.*, No. 06-6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010). Public policy weighs in favor of approving this fee award, as is reflected in the prevailing trend for percentage-of-fund fee awards. This process aligns the interest of the class with its counsel, "providing a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 122.

All of the factors set forth in *Goldberger v. Integrated Res. Inc.*, 209 F.3d at 51, therefore, weigh in favor of this reasonable fee award of 30% of the Qualified Settlement Fund.

The Court also finds that the fees requested are reasonable under the lodestar method. Courts have referred to the lodestar comparison as a "cross-check" on the issue of reasonableness. *See Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194, 2010 WL 4877852, at *22 (S.D.N.Y. Nov. 30, 2010); *Ersler*, 2009 WL 454354, at *7. In particular, the Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F. 3d at 47. "As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate." *Johnson*, 2011 WL 4357376, at *20 (citing *Hicks v. Morgan Stanley,* No. 01 Civ. 10071, 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005) (internal quotation marks omitted)). The Court must then consider whether a multiplier is warranted based on certain factors, such as: "(1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved." *In re Boesky Sec. Litig.,* 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see Goldberger,* 209 F.3d at 47. The Court has already discussed at length factors 1, 3 and 4 in the context of a percentage-of-the-fund analysis and will not repeat that reasoning here. In light of the business of the Defendant in this action, the Court finds that factor 2 plays no role here.

Class Counsels' fee request here is for 30% of the Qualified Settlement Fund – $980,663.99. This figure represents a lodestar multiplier of 2.3. "Courts regularly award lodestar multipliers from two to six times lodestar." *Johnson*, 2011 WL 4357376, at *20 (citing

11

*In re Lloyd's Am. Trust Fund Litig.,* 2002 WL 31663577, at *27 (stating that a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 371 (S.D.N.Y.2002) (explaining that the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market–Makers Antitrust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y.1998) (awarding multiplier of 3.97 times lodestar)); Pls.' Mem. at 17. In assessing the lodestar for cross-check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger,* 209 F.3d at 50. Instead, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Id.*

According to the undisputed billing records, the Virginia & Ambinder firm expended approximately 1040.35 hours of attorney, paralegal and staff member time and Leeds Brown Law firm expended approximately 389.92 hours of attorney, paralegal and staff member time over the course of six years. *See* Ambinder Decl. II, ¶ 8. The time spent by Class Counsel is described in the February 22, 2018 Declaration of Lloyd Ambinder and Class Counsels' contemporaneous billing records for both firms are attached as Exhibits A and B to that Declaration and at DE 106-3 and 106-4. Ambinder Decl. II, Exs. A and B. Based on its knowledge of this case, the Court finds the 2.3 multiplier to be well within the range awarded by courts in the Second Circuit. Consequently, for the foregoing reasons, the Court finds that the attorneys' fee request of $980,663.99 is reasonable and warranted by the circumstances of this case and the fee award is therefore GRANTED.

### B. Out-of-Pocket Expenses

Class Counsel also seek to recover $19,336.01 for out-of-pocket expenses to be paid from the Qualified Settlement Fund. *See* Ambinder Decl. II, ¶ 17; DE 106-3, DE 106-4; Pls.' Mem. at 18. These costs include Plaintiffs' court and process server fees, postage and courier fees, costs to the claims administrator for sending notice and processing consent to join forms from the FLSA collective, photocopies, travel expenses, discovery costs and legal research. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks omitted); *see Trustees of the Bldg. Trades Educ. Benefit Fund v. Preferred Electric II, Inc.*, 16 CV 3294, 2018 WL 700116, at *2 (E.D.N.Y. Jan. 3, 2018); *Hall*, 2016 WL 1555128, at *17; *Johnson*, 2011 WL 4357376, at *21. Class Counsel have provided the underlying documentation supporting these claimed expenses. *See* Ambinder Decl. II, Exs. A and B. The Court finds that these costs are reasonable and were incidental and necessary to the litigation. Plaintiffs' request for $19,336.01 in costs is therefore GRANTED.

### C. Service Awards

The Settlement Agreement provides that "[i]n return for services rendered to Class Members . . . at the Fairness Hearing, Named Plaintiffs may apply to the Court to receive Service Awards of no more than a cumulative total of up to Twenty Thousand Dollars ($20,000.00) from the QSF." Settlement Agreement, Section 3.4(A). At the Fairness Hearing, Class Counsel requested that named Plaintiffs John Michael Cohan and Wackson Barthelamy be given Service Awards of $10,000 each, which amounts to "approximately 0.31% of the total recovery." Pls.'

Mem. at 21.

Service awards are common in class action cases. They are "important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiff." *Khait,* 2010 WL 2025106, at *9 (awarding $15,000 service awards each to five named plaintiffs and $10,000 service awards each to ten other named plaintiffs); *Dupler*, 705 F. Supp. 2d at 245-46 (finding enhancement awards of $25,000 to one plaintiff and $5,000 to a second plaintiff reasonably based on the participation of the two individuals in the action to date); *Willix*, 2011 WL 754862, at *7 (finding service awards of $30,000, $15,000 and $7,500 to various plaintiffs to be reasonable)*.* Class Counsel point out that these Plaintiffs contributed significantly to the case by "providing Class Counsel with detailed factual information regarding their job duties, Defendant's policies, and other information relevant to their claims, providing information responsive to Defendant's interrogatories and document demands, attending several lengthy mediation sessions, and regularly making themselves available to communicate with Class Counsel when necessary, including throughout the settlement process." Pls.' Mem. at 21. The Court finds that the Service Awards here "when compared to incentive awards given generally to named plaintiffs across a variety of class actions . . . fall solidly in the middle of the range." *McBean v. City of New York*, 233 F.R.D. 377, 391-92 (S.D.N.Y. 2006) (citing *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911, 2005 WL 1041134, at *3 (S.D.N.Y. May 5, 2005 (collecting cases illustrating a range of incentive awards and approving an awards of $25,000)). These amounts shall be paid from the Settlement Fund. Given the reasonable amount of the proposed awards, Plaintiffs' motion is GRANTED and named Plaintiffs John Michael

Cohan and Wackson Barthelamy shall receive Service Awards of $10,000 each drawn from the Qualified Settlement Fund.

**II.     CONCLUSION**

For all of the foregoing reasons, Plaintiffs' Motion for Approval of Attorneys' Fees and Costs and for Approval of Service Awards is GRANTED, to the extent set forth in this Decision and Order.

**SO ORDERED:**

Dated: Central Islip, New York
September 28, 2018

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge